The case of the people of the state of Illinois v. Davin Brinkoetter And we have Mr. Timothy Ting for the appellee and the appellant appears to have waived Am I correct? No, I'm sorry. The defendant is the same age as her. I'm jumping ahead. I'm looking at Mr. Ting on another case. I'm very sorry. You may proceed. May it please the court? Yes. James Brinkoetter v. Defendant David Brinkoetter In my brief, I did not request for argument, but since I'm here, I would like to argue for my client. You certainly may do so, and I'm sorry I did not mean to cut you off. When you drive your car in a two-lane road in the state of Illinois, when you come to a town, you always see a sign that says speed zone ahead. And I think there's a reason for that, and the reason is because I believe that the statute requires it. We have, on the one hand, the general speed restrictions in the state of Illinois set forth in 11-601. The municipalities and so forth in the state of Illinois are allowed to reduce or increase the limits within their municipal limits, provided they meet certain conditions. And they're allowed to do so when appropriate signs giving notice of the limit are erected in the proper place and in the proper part or zone of the highway or street. Among other people that think this is a requirement, that the speed zone warning signs exist, includes the village of Irving. Because after we raised this issue, they went out and they found this sign was missing, and they replaced it, as shown by Defendant's Exhibit No. 2, which is a part of my brief. We respectfully suggest to the court that the statute requires that a notice be given. The word notice is, and I think this is contrary to Judge Sanders' ruling, because her ruling essentially is that the posting of the limit itself is the notice of the limit. But we believe that the term notice is a term that you apply to give warning. That's not what the statute says. The statute just says an appropriate sign giving notice. So speed limit, that's your notice. Not speed limit up ahead. Watch for the speed limits. I respectfully suggest that the village of Irving believes that it means, and shows by their action after this issue was raised, that they believe they needed to have a warning sign, and they didn't have a warning sign. Next issue. In this particular statute, also limits. It allows the municipality to impose a speed restriction within their municipal limits that's different from the statutory scheme. However, it does not allow a limit below 35 miles per hour unless it is within an urban district. Stipulation that was signed by the state and the defense here establishes that there are a total of eight structures between a half a mile from the village and the area where the village itself begins. There's two-tenths of a mile. First of all, there's Coffeen Road, and there's three-tenths of a mile. There's four structures in that area. The sign comes up, and then there's four more structures in the two-tenths of a mile remaining before the village proper. This is not an urban district. It is a rural district, and the municipality did not have authority to impose a speed limit of less than 30 miles per hour unless it was within an urban district. Whether it is in the city limits or corporate limits or the authority of the village or not, that is not the deciding factor. The legislature sets forth that it can't be below 35 miles per hour if it is not an urban district. Because of this limitation, we respectfully suggest that the city did not have authority to impose a limit of less than 35 miles per hour, which in this particular case was 30 miles per hour. The last issue, I respectfully suggest that where we have, and the record establishes here, that the statutory, the default limit, the 11-601 limit outside of the city applied is 55 miles per hour. We come to this 30-mile-an-hour speed zone, sitting out in the middle of a cornfield, and the difference between 55 and 30 is 25 miles per hour. That's far in excess of what is allowed as a difference. Because it's more than 10 miles per hour different, the city has exceeded its authority given by 11 days. For the foregoing reasons, we believe that the speed zones imposed were, and the evidence was insufficient to prove the defendant guilty of speeding because his speed limit was less than 30 miles per hour. The speed did not exceed the legally applicable limit in this area, which was 55 miles per hour. We respectfully ask the court to reverse the conviction of the defendant and find that he mistakes, I'm sorry, that the village of Urban could not impose a speed limit of greater than 35 miles per hour than, I'm sorry, of less than 30 miles per hour because it was outside the Urban district. The fact that the court disagrees with me on my interpretation on the first issue does not change the fact that the 35 miles per hour, or 30 miles per hour is less than what is permissible outside of the Urban district. Thank you. Thank you, Mr. Brinkheader. Mr. Ting? Mr. Ting, you make an argument on the third page of your brief about the second part of that statute with a hypothetical. It says, presumed that the speed zone ahead was 601 feet before the actual speed sign, that if an officer used the electronic device 501 after driver passed the speed zone ahead, then under the language of the statute, that would be appropriate. I just don't follow that. I mean, because then there wouldn't be any violation of the speed limit. Precisely. But maybe what they mean, the more rational, in my mind, would be that you have to, at a minimum, place the sign over 500 feet from the speed zone change. Well, Your Honor, I would state that, first and foremost, as Justice Wexton noted, the notice sign itself is the speed limit. That is the state's position. Well, I understand that that's the state's position. If we were to presume that the notice sign, the speed zone ahead sign, was the precursor, from that point on, that officers could then go ahead and use their electronic radar devices after the 500 feet. But then there wouldn't be any violation of the speed limit. The officer then uses electronic radar to clock the speed limit. Bingo. I think they're okay, then. They are not, at least within the established case law. There is no case at all that says that the notifying sign is actually the place where the electronic radar should be beginning to have the 500 feet distance. And I would point this Court specifically to see a Rockford v. Custer. It's in my brief 404 Hill Act 3E197. So you're saying they all have to be 500 feet from the actual speed limit? From the actual speed limit. Now, there are only two cases that are published on this. And that's somewhat understandable, given that it's a speeding case. So these issues don't usually go on appeal. But from what we have, we only have two cases. And both cases unanimously say that the 500 feet applies to the actual posted speed limit, not the notifying sign that says there is a speed zone ahead of it. So there's going to be a change. So your point, then, is that when they talk about sign, they have to be talking about the same sign. Absolutely. Otherwise, it would be vague, I guess, with respect to the kind of definition. It just makes sense. Now, there is somewhat of a quandary as to why cities post speed zone ahead signs at all. Because under the defendant's position, the speed zone ahead signs are a requirement. There is nowhere in any statute where it actually says that a notifying sign is required. However, we do see these a lot as far as this court can take judicial experience of that. But I think that's more of a precursor for public safety that the state uses through various municipalities to show the citizen that there's going to be a speed zone change. But there is no requirement within any statute that the defendant points to, nor that exists from my research, which states that a speed zone ahead sign is a requirement. And because of that, the statute would make the most sense under its plain meaning by saying that the speed limit sign that is posted is the notifying sign through which an officer can measure 500 feet and then begin to use his electronic radar. As to the second issue, the 30-mile per hour speed zone limit, he says, is not applicable here because it wasn't an urban district. Admittedly, Your Honors, again, there's very little case law here. The only case that I found on this particular statute is people versus – or city of Geneva versus Oregon, again, in my brief. And in this case, they said that the key factor for determining what was an urban district was to see whether the structures had direct access to the highway in which the speed limit was posted. Here, it's clear from the photographic evidence within the record that the houses were residences in which they could easily go onto the highway. The defendant himself, as stated in page 3 of the record, says, I was heading from Coffeen Power Plant into town. So the defendant recognizes, again, that he's heading into the city. As well, I would point this court to the residential nature of this particular zone where the speed limit is posted because there's a slow children play sign that is right there with the notifying sign, which was not posted on the sign at the time the defendant violated the speed limit. But as you can see from those exhibits, there's a slow children play sign here. There are multiple residences. As the defendant stated, there's a stipulation of at least eight houses within that distance. And there's a maintenance shed for the county or a village township shed, which is where the officer was located when he enacted his electronic speed radar. All of these instances go to the plain conclusion that an urban district is where there are residences, where there is a population of people that is considerably more than there would be in a rural area. And we have a collection of eight houses in a very small area or a small length of setting. We have a maintenance townshed, and we have a sign that says residential, slow children play sign. All of these elements go to the Orry's analysis that this would be an actual urban district. Now, admittedly, the statutory language is a bit confusing. It says the territory contiguous to and including any street which is built to structures devoted to business, industry, or dwelling houses situated at intervals of less than 100 feet furthest and a quarter mile or more. I don't know exactly what to make of that language other than to say that this court has an opportunity to publish an opinion here that would create a precedent that would be a bit more understandable than, say, the statutory language that we have at hand. As to the third issue on appeal, the defendant states that adjacent speed limits can only be within a 10-mile reduction. Isn't that what the statute says? Well, Your Honor, it is what the statute says. But before we get there, I would submit to this court that there is nothing in the record that shows that the prior posted speed limit was 55 miles per hour. The only evidence in the record that shows that is the defendant's own testimony. The defendant's self-serving claim surely should not count as substantiated fact that it was in fact 55 miles per hour. There is nothing within this record for this court's review that actually states that it was a 55-mile-per-hour speed limit that was then reduced to 30 miles per hour. And as it has been long held, the fact finding was not required to believe the defendant's testimony, and appellant bears the burden of presenting an adequate record to support his claim of error. And as I've so often cited, one of my favorite quotes, judges are not like pigs hunting for truffles buried in grease. This court's job is now to make sure that the speed limit was 55 miles per hour. If the defendant is going to say that it was 55 miles per hour, he should have admitted he said it was so. Aren't speed limits 55 miles per hour unless they're posted otherwise in rural areas? Well, it could be 45 miles per hour, Your Honor. If it's posted? Yes, indeed. If it's not posted, I think they're 55, right? But we don't know. We don't know whether this was a posted speed limit or whether this was a non-posted speed limit with the presumption of 55 miles per hour. Again, that's speculation. It's not within the record. What we have in the record is the defendant saying it was 55 and admitted it was 30. We have nothing, no substantiated, clear evidence from an objective source that says it was 55 and 30. So my first response, Your Honor, would be that the defendant cannot present this claim because the record does not support it. Well, he could, but you're saying that the judge could choose not to believe it. Yes. I mean, it is evidence. Yes. Now, if the court gives the substantive portion of that where it says that there should not be a speed reduction of more than 10 miles per hour with an adjacent speed limit, I would point this court then to Sydney accrued error versus Pelletier. In this case, we had a reduction from 55 to 40. Now, it was a construction zone, admittedly, but the court said even though that wasn't exempted specifically in the statute, it was understandable for public safety to reduce that speed limit. Here we have a very similar instance. We have a residential zone which had a clear sign that said slow children in play. We have eight residences. We had to have direct access to the highway. Surely, the city would have the ability to protect its citizens from an oncoming speeder from going 55 miles per hour to merely going 45 and still presenting a substantial threat to their children. I've cited numerous cases in my briefs that show the dangers of excessive speed, particularly in areas that have children or instances where they could run away. And furthermore, I ask this court to take judicial notice as I state in my brief of just the various instances that we see on everyday occurrences that seem to violate the statutory language. If we look on the interstate 57, interstate 57, every turn all of a sudden goes from 55 or 65 to 10 miles per hour, 30 miles per hour. When we look at school zones, when we look at hospitals, when we look at speed bump areas, these are all instances which are clearly observable to show a speed zone coming from 45 to 35 down to 20 or 10 or 5. All of these instances are not particularly situated or specified within the statute, but they are commonplace exceptions that the public generally accepts. And I would dismiss this court. The reason is because the overall rationale, the statutory language, the overall legislative intent is public safety. To not have someone speeding at an incredibly high speed to a less high speed is still incredibly difficult or dangerous. So I would submit to this court that since it's an urban district, the city or municipality had no choice but to reduce the speed to 30. Whether, if this court was to believe that it was in fact 55 as far as the adjacent speed limit, then I would state that the municipality was doing what was best in the interest of its citizens, which would still correlate with the overall intent of the statutory language. Does this court have any questions? I don't think so. Thank you, Mr. Ting. Mr. Breencatter, do you have rebuttals? Yes. I'll try to be very brief. First of all, whether this is a residential area or not is not discussed in the statute. The limitations of the municipality to reduce the speed limit is not discussed in terms of whether it's residential or not. The word residential district does appear in the statute, but it does not appear in reference to when this municipality or local authority may have or may not have the authority to set a different speed limit than the default speed limit set in 11601. The only thing discussed there is whether it's in an urban district or not. An urban district is where there's built up structures from less than 100 feet apart for a quarter mile or more, and that is clearly shown not to be the case here by the stipulation. Also, I would point out that the stipulation refers to structures. The structures that it refers to include the municipal building that we discussed. There are different residences, garages, houses, municipal structures. They're all on one side of the road, and if you add them all up, there's 2,640 feet in a half a mile. There's 1,320 feet in a quarter mile. If you can just do some quick math, you can see that there's no way that these structures, these eight structures are less than 100 feet apart for a quarter mile or more. They're 320 feet apart unless you consider that they're all bunched up in one spot, and I suggest to the court that it's just not reasonable. I also would point out that the differential between the adjacent speed zones that you find in school zones and construction zones, the statute is specially geared to protect schools and construction workers so that those differentials don't block. Also not applicable in those areas is the limitation on the use of radar within 500 feet, and it's completely distinguishable. The Orange case that was mentioned by counsel is a case in which there was a street, then there was another street leading into a residential area where there was a lot of residences that are very close together, and the appellate court ruled that because the adjacent residential area was not immediately by the street, that it wasn't an urban area. I'm sorry, it was still an urban area, and they couldn't include those streets that were in an easily accessible residential area, urban area, as allowing them to cause a reduced speed down to 30 miles per hour. For the foregoing reasons, we ask the court to consider the arguments of the defendant and to reverse the decision of the trial court. Thank you, Mr. Brickgetter, Mr. Teague. Thank you for your briefs and your arguments. We'll take the matter under advisement.